UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**Hon. Hugh B. Scott**

11CR374A

**Order**

PAULINE GICHURI,

Defendant.

Before the Court is defendant's omnibus motion (Docket No. 13) seeking notice of statements; exclusion of statements made by non-testifying co-conspirators; filing a Bill of Particulars; disclosure of identity of informants; discovery; production of Jencks Act materials; production of Brady material; production of Federal Rules of Evidence 404(b), 608, 609 materials; preservation of evidence; and access to the Grand Jury minutes (id.). During oral argument, defendant stressed that the Court consider her motion for a Bill of Particulars. Defendant also seeks a voir dire of the Government's expert witnesses (id., Def. Atty. Decl. ¶¶ 105-10) and an audibility hearing (id. ¶¶ 111-12); both of these items are better decided by the Judge with plenary jurisdiction and the motions as to those forms of relief are **deferred to the District Judge**.

The Government responded (Docket No. 17), moved for reciprocal discovery (id. at 26-27). These motions were argued on July 11, 2012 (text minute entry, Jul. 11, 2012; cf. Docket No. 15) and the motions were deemed submitted as of July 11, 2012.

BACKGROUND

Defendant is charged with conspiracy, in violation of 18 U.S.C. § 371; three counts of false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a), during three different occasions; making a false statement, in violation of 18 U.S.C. §§ 1001(a)(3) and 2; and unlawful procurement of naturalization, in violation of 18 U.S.C. § 1425(a) (Docket No. 1, Indict.). These steps are allegedly defendant's attempts, as a native of Kenya (id. ¶ 12), to stay in this country under false pretenses. Defendant entered the United States on a visitor visa (see id.). The Indictment alleges that defendant conspired to defraud the United States to impede the fair and objective evaluation of an application for conditional residence, permanent residence, and naturalization, to enter a marriage to evade immigration laws, and to make and use false documents (id. ¶ 3). Defendant allegedly conspired to enter into a sham marriage in order to obtain naturalization in the United States (see id. ¶ 14). Then defendant allegedly made false statements regarding this marriage to immigration officials from 2006 to 2010, filing the various interim and permanent residence and naturalization documents that purport to a valid marriage by defendant to a United States citizen (id. Counts 2-6), David Owens (Docket No. 17, Gov't Response at 2).

According to the Government's response (Docket No. 17, Gov't Response at 1-6), defendant obtained her United States naturalization status by fraud, by enticing a United States citizen to enter into a marriage for the sole purpose of aiding defendant's quest for United States citizenship rather than a bona fide desire to live as husband and wife (id. at 1-2). Investigation by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") revealed a friend of defendant's who stated that, in 2004, defendant asked if her friend

knew of someone willing to marry her so that she could gain status in the United States and that defendant offered to pay that husband to marry her (id. at 5). The friend replied that she knew Owens and that the friend asked if Owens was interested in marrying defendant for money, and the friend arranged a meeting between defendant and Owens (id.). The friend stated that she was present at Buffalo City Hall on June 30, 2004, when Owens and defendant wed (id.). Owens told ICE agents that the marriage was solely to allow defendant to obtain status in this country and for Owens to be paid $5,000 for the sham marriage (id. at 6). Owens stated that he never lived with defendant but that she put some of her clothes in his closet in case Immigration inspected his house (id.). Owens stated that any documents that were filed regarding their marriage were false, and that he and defendant lied during Immigration interviews (id.). Owens then told investigators that defendant paid him $500 more for cooperating in their divorce in January 2009 (id.) although she attested in a Form N-400 that she remained lawfully married to Owens and appeared in a January 2010 interview claiming that she was still married to Owens (id. at 4).

## DISCUSSION

I.  Defendant's Statements

Defendant first asks for the Government to disclose her statements that the Government intends to offer, reserving the right to move to suppress such statements (Docket No. 13, Def. Atty. Decl. ¶ 11). The Government responds that it has no written or recorded statements of defendant following her arrest but has provided to defendant her statements during the naturalization process (Docket No. 17, Gov't Response at 7-8), the statements of others made in support of the naturalization application, Owens' statement, and will provide defendant's statements in another investigation (id. at 8). This **satisfies defendant's present request**.

II.     Non-Testifying Co-Conspirators

Defendant next seeks to bar the admission of statements of non-testifying co-conspirators and co-defendants (Docket No. 13, Def. Atty. Decl. ¶ 12), see Bruton v. United States, 391 U.S. 123 (1968). Since defendant is the sole defendant in this case, the Government concludes that this request is not relevant here (Docket No. 17, Gov't Response at 8). The Government adds that, through voluntary discovery, defendant has received the statements of co-conspirators, but statements not made in the course of the conspiracy. Statements in response to the ICE investigation and prosecution prior to trial will be produced pursuant to the Jencks Act. (Id. at 8-9.)

Defendant **has the relevant statements** from co-defendants to make a Bruton motion if applicable here.

III.    Bill of Particulars

During oral argument, defendant argued that this Court should consider closely her request for the filing of Bill of Particulars. There, she asks for 86 (to quadruple "h") items particularized (Docket No. 13, Def. Atty. Decl. ¶ 23; cf. Docket No. 17, Gov't Response at 9). She asks for the names of unindicted co-conspirators, the specifics as to when she agreed to act in the conspiracy, the criminal acts she did, and how she conspired and combined (Docket No. 13, Def. Atty. Decl. ¶ 23). She seeks particularization as to the basis for the Government's contention that her marriage to the United States citizen is a sham and what false statements were made on the various immigration forms filed by defendant (id.). She argues that a Bill of Particulars is appropriate in complex cases, such as conspiracies covering an extended period of time (id. ¶ 24). Since the allegations in the Indictment are so general, defendant is not apprised

4

of what she is being accused of (id. ¶ 25) and while she has some discovery from the Government, she is not informed of much of what is alleged in the Indictment (id. ¶ 26). Given the detail alleged in the Indictment and the "significant discovery materials" produced, the Government declines further particularization (Docket No. 17, Gov't Response at 9-15), arguing that defendant fails to meet the legal threshold for a Bill (id. at 14-15).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy, to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), but the Government need not prove overt acts in furtherance of the conspiracy, United States v. Knuckles, 581 F.2d 305, 311 (2d Cir.), cert. denied, 439 U.S. 986 (1978), or particularize on the facts surrounding the formation of the conspiracy or when a given defendant joins it, United States v. Iannelli, 53 F.R.D. 482 (S.D.N.Y. 1971). While it is within this Court's sound discretion to order the filing of a Bill of Particulars, Wong Tai v. United States, 273 U.S. 77, 82 (1927), the burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights, id. Any particularization confines the Government's proof to the particulars

furnished, United States v. Glaze, 313 F.2d 757, 759 (2d Cir. 1963); United States v. Murray, 297 F.2d 812, 819 (2d Cir.), cert. denied, 369 U.S. 828 (1962).

Upon review of the Indictment and the extent of discovery produced in this case to defendant (some of which is described below), this Court finds that defendant is **not entitled** to a Bill of Particulars from the Government here inasmuch as she is sufficiently advised of the charges against her to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

IV.     Identity of Informants

Defendant next seeks the identity of informants (Docket No. 13, Def. Atty. Decl. ¶¶ 32-44). The Government concedes that informants have been used, but defendant is aware of one informant (her husband) but argues that disclosure of other informants is unwarranted at this time (Docket No. 17, Gov't Response at 15), proposing instead to produce this material with its Jencks Act or Brady materials (id. at 16).

The Government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.), cert. denied, 489 U.S. 1089 (1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

Here, one of the two noted informants is known to defendant; that person is her purported husband, while the second informant attended nursing school with defendant in 2004 (see Docket No. 17, Gov't Response at 5). Defendant has not established that the pre-trial disclosure of the

6

identities of any other informants prior to Jencks Act or <u>Brady</u> production is essential to her defense. This request is **denied**.

V.     Discovery

Defendant concedes that the Government has furnished her with voluntary discovery but she still moves for discovery under Rule 16 (Docket No. 13, Def. Atty. Decl. ¶¶ 53, 54, 59-69) and notice of the evidence the Government intends to use against her pursuant to Rule 12 (<u>id.</u> ¶¶ 55-58). The Government argues that it fully complied (or either is in the process of complying or intends to comply) with its discovery obligations in voluntary discovery, furnishing to defendant the Immigration A-file for inspection as well as defendant's statements during the course of another investigation that the Government may use in impeachment but not intending to use in the Government's case-in-chief (Docket No. 17, Gov't Response at 6-7).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

VI.    Jencks Act

Defendant seeks production of Jencks Act materials (Docket No. 13, Def. Atty. Decl. ¶ 97) at least sixty days before trial (<u>id.</u> ¶ 68) or eight weeks before trial for specific statements (<u>id.</u> ¶ 98). The Government opposes pretrial disclosure of witness statements, rather it agrees to provide them two weeks prior to trial.

The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses, 18 U.S.C. § 3500. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. The Government shall disclose Jencks Act information **prior to trial as ordered in the District Court's final pretrial Order but no later than two weeks before trial**.

VII. <u>Brady</u> Materials

Defendant has requested that the Government disclose all materials potentially favorable to her, including information to be used for the impeachment of the Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny (Docket No. 13, Def. Atty. Decl. ¶¶ 70-76), as well as impeachment information, <u>see</u> <u>United States v. Agurs</u>, 427 U.S. 97 (1976) (<u>id.</u> ¶¶ 77-81, 85-86), and access to Government employees' personnel files to see if there is any impeaching information contained therein (<u>id.</u> ¶ 87). <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [Government's] witness," <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain. The Government's written response is that it agrees to provide impeachment <u>Brady</u> material at the

time for production of Jencks Act materials, concluding that it is in full compliance with its Brady obligations (Docket No. 17, Gov't Response at 21-22).

The instant case does not appear to be unusually complex. Although the time period of the conspiracy and investigation is over seven years, the heart of this case is the alleged misrepresentation of defendant's marital status to a United States citizen in a series of immigration documents and interviews with Immigration authorities. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this District (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

VIII. Federal Rules of Evidence 404(b), 608, 609 Materials

Defendant next seeks notice of any evidence that the Government contends would be admissible under Federal Rule of Evidence 404(b) (Docket No. 13, Def. Atty. Decl. ¶ 92) and disclosure of impeachment evidence the Government intends to use (id. ¶ 93). She also seeks information as to character or conduct that could be used to impeach any witness the Government intends to call (id. ¶ 94). The Government states that it will advise defendant of its intentions regarding Rules 404(b), 608(b), and 609 evidence it intends to use and do so consistent with this Court's final pretrial Order regarding the timing of its Jencks Act disclosure (Docket No. 17, Gov't Response at 22-23). This offer to produce and its timing **is sufficient**.

IX. Preservation of Evidence

Defendant seeks preservation of agents' rough notes and other evidence (Docket No. 13, Def. Atty. Decl. ¶¶ 100-02). The Government has directed its agents to preserve rough notes and

the Government will produce them with the Jencks Act material production (Docket No. 17, Gov't Response at 23). This **also is sufficient**.

X.      Grand Jury Transcripts

Defendant next seeks production of the Grand Jury minutes (Docket No. 13, Def. Atty. Decl. ¶ 103). She claims that she does not know the witnesses against her and that her particularized need for the transcripts is to know the evidence against her (id. ¶ 104). The Government counters that the Indictment is not "bare bones" but is "very detailed" and therefore Grand Jury disclosure in unwarranted (Docket No. 17, Gov't Response at 23).

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury. The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id. Defendants had to show that they have a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988); see United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *14-16 (S.D.N.Y. June 29, 1994) (granting in camera review of Grand Jury minutes and reserving decision on motion to dismiss Indictment). A defendant must state a particularized need for these transcripts "in order to present a vigorous defense" which outweighs the principle of Grand Jury secrecy, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). There are occasions "when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly 'disclosure is wholly proper where the ends of justice require it,'" Pittsburgh

Plate Glass, supra, 360 U.S. at 400 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940)). The burden is upon the defendant to show a particularized need exists that outweighs the policy of Grand Jury secrecy, id. Particularized need includes impeachment of a witness at trial, refreshing recollection, and testing witness credibility, United States v. Proctor & Gamble Co., 356 U.S. 677, 683 (1958). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," Torres, supra, 901 F.2d at 233, and (even if disclosed) "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants," Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Torres, supra, 901 F.2d at 233.

As was held in the Pittsburgh Plate Glass case, supra, 360 U.S. at 400, defendants have not made a showing of particularized need, but cf. Dennis v. United States, 384 U.S. 855, 872-73 (1966) (Court found that defense did not make out a particularized need, listing the circumstances of particularized need). Merely stating the desire to make a vigorous defense in general or the lack of particularization in the Indictment does not show a particular need for a given portion of the Grand Jury testimony (such as specifying which witness's testimony is necessary for that vigorous defense) or show whether that Grand Jury testimony is needed for impeachment, refreshing recollection or testing credibility.

The motion on this ground is **denied**.

XI. Government Reciprocal Discovery

Finally, the Government in it response cross moved for reciprocal discovery (Docket No. 17, Gov't Response at 26-27), which defendant did not respond. Under Rule 16, the Government is entitled to production of documents in a defendant's possession that the defendant

intends to use in her case-in-chief. Defendant is reminded of her obligations under Rule 16 and Federal Rules of Evidence 803(24) and 804(b)(5) to produce pursuant to the Government's notice for reciprocal discovery. The Government's motion is therefore **granted**.

## CONCLUSION

For the reasons stated above, defendant's motion for various forms of relief (Docket No. 13) is **granted in part, denied in part**, as stated in detail above. The Government's motion for reciprocal discovery (Docket No. 17, Gov't Response at 26-27) is **granted**.

So Ordered.

                                              */s/ Hugh B. Scott*
                                                 Honorable Hugh B. Scott
                                                 United States Magistrate Judge

Dated: Buffalo, New York
        August 9, 2012